## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **COR CLEARING, LLC,** | | |
| **Plaintiff,** | | **8:13CV292** |
| **vs.** | | |
| **DAVID H. JARVIS,** | | **ORDER** |
| **Defendant.** | | |

This matter is before the court on the defendant's Motion to Stay Proceedings and Compel Arbitration (Filing No. 16) and Motion to Stay Discovery and Other Pretrial Proceedings, and For a Protective Order, Pending Resolution of Defendant's Motion to Stay Proceedings and Compel Arbitration (Filing No. 18).  The defendant filed a brief (Filing No. 17) with evidence attached[1] in support of the motion to compel arbitration and a brief (Filing No. 19) with evidence attached in support of the motion to stay.  The plaintiff filed a brief (Filing No. 22) and an index of evidence (Filing No. 23) in opposition to the motion to compel arbitration and a brief (Filing No. 21) in opposition to the motion to stay.  The defendant filed a brief (Filing No. 24) and an index of evidence (Filing No. 25) in reply.

### BACKGROUND

The plaintiff brought suit against the defendant for breach of a fiduciary relationship.  **See** Filing No. 1 - Complaint ¶ 1.  The plaintiff, a clearing broker, is "an independent full-service clearing and settlement firm," providing "technology, administrative services and product offerings through multiple customized platforms" to "approximately 75 introducing brokers."  **Id.** ¶ 10; **see** Filing No. 17 - Brief p. 7 n.1.  An introducing broker has a direct relationship with an investing client and delegates the work of the floor operation, trade execution, and handling of securities and money to a clearing broker.  **See** Filing No. 17 - Brief p. 7 n.1.

---

[1] All filings shall comply with the Federal Rules of Civil Procedure and the Civil Rules of the United States District Court for the District of Nebraska.  Specifically, any brief and index of evidence shall be filed separately from each other.  **See** NECivR 7.1(a)(1) and (a)(2)(B).  Documents which are not filed in compliance with the rules may be stricken from the record or disregarded by the court.

In January 2012, the plaintiff acquired Legent Clearing. **See** Filing No. 1 - Complaint ¶ 10. The defendant had been employed by Legent Clearing since December 31, 2009, as the Executive Vice President and General Counsel, and continued to work for the plaintiff as an employee, an attorney, and as General Counsel or Deputy General Counsel, until September 30, 2012. *Id.* ¶ 12; **see** Filing No. 17 - Brief p. 2-3. On December 31, 2009, as part of his employment, the defendant signed Legent Clearing's Arbitration Policy form, which provided:

> I further agree that . . .
>
> I will submit any dispute - including but not limited to my termination - arising under or involving my employment with Legent Clearing to binding arbitration within one (1) year from the date the dispute first arose. I agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment with Legent Clearing or the termination of that employment. . . .

Filing No. 17 - Ex. R Legent Clearing Arbitration Policy.

The defendant was an independent contractor for the plaintiff from October 1, 2012, until December 31, 2012. **See** Filing No. 17 - Brief p. 3. As part of the change in his status, in October 2012, the defendant signed a Separation Agreement and General Release, including a Contractor Agreement. **See** Filing No. 23 - Ex. 1(A). The Separation Agreement states:

> This Agreement contains the entire understanding and agreement between COR and Mr. Jarvis with respect to the subject matter hereof and supersedes and replaces any and all prior agreements and understandings *concerning the subject matter of this Agreement*, with the exception of any agreements signed by both parties hereto on or after the effective date of this Agreement.

Filing No. 23 - Ex. 1(A) Separation Agreement and General Release ¶ 7 (emphasis added). Although the agreement does not mention arbitration it contains a section titled Governing Law, which states:

> *This Agreement shall be construed and interpreted in accordance with the substantive laws of the State of Nebraska* without giving effect to its conflict-of-laws principles. *Mr. Jarvis submits to the jurisdiction of the federal and state courts located in Douglas County, Nebraska* and consents that he may be served with any process or paper by certified or registered mail or by

> personal service within or without the State of Nebraska in accordance with applicable law.  Furthermore, Mr. Jarvis waives and agrees not to assert in any action, suit or proceeding brought by COR to enforce this Agreement that he is not personally subject to the jurisdiction of such Douglas County, Nebraska courts, that the action, suit or proceeding is brought in an inconvenient forum or that the venue of the action, suit or proceeding is improper.

*Id.* ¶ 8 (emphasis added).

In late 2012 and early 2013, more than one of the plaintiff's introducing brokers, independent of their relationships with the plaintiff, became clients of the defendant. **See** Filing No. 17 - Brief p. 7; **see also** Filing No. 1 - Complaint ¶¶ 18-22.   The plaintiff alleges that in May and June 2013, the defendant contacted the plaintiff by identifying himself as the attorney for two of the plaintiff's clients.  **See** Filing No. 1 - Complaint ¶¶ 19, 21.  In these communications, the defendant represented the clients in disputes against the plaintiff.  *Id.* ¶¶ 19-22.  The plaintiff alleges the defendant "appeared" to have disclosed the plaintiff's confidential information and strategies to the clients to assist them in their disputes against the plaintiff.  *Id.* ¶¶ 20, 22.

The plaintiff also alleges it has "uncovered multiple instances" of the defendant disclosing information he received during privileged legal communications with the plaintiff's Board of Directors to non-essential employees, placing the communications at risk while he was still employed with the plaintiff.  *Id.* ¶¶ 23-24.  The plaintiff alleges the defendant has continued to disclose privileged communications since his departure.  *Id.* ¶ 23.  The plaintiff contends these disclosures significantly disadvantaged the plaintiff in dealings with its adversaries and damaged its relationships with clients.  *Id.* ¶ 28. Based on these allegations, the plaintiff asserts claims for breach of fiduciary duty (Claim 1) and negligence (Claim 2) against the defendant.  *Id.* at 7-11.  Additionally, the plaintiff seeks injunctive relief forbidding the defendant from disclosing confidential attorney-client communications and confidential documents and information.  *Id.* at 11-14.

The defendant has not yet filed an answer.  Instead the defendant seeks a stay of all proceedings pending resolution of his motion to compel arbitration.  **See** Filing Nos. 16, 18.  Specifically, the defendant argues the December 31, 2009, agreement is a binding arbitration agreement that requires these proceedings be stayed until the parties

have an opportunity to arbitrate. **See** Filing No. 16. Additionally, the defendant contends the parties are bound to arbitrate by virtue of the plaintiff's broker-dealer license through the United States Securities and Exchange Commission (SEC) and the Financial Industry Regulatory Authority (FINRA). **See** Filing No. 17 - Brief p. 10. The plaintiff argues a third agreement, the October 2012 Separation Agreement, supersedes and nullifies any prior obligation to arbitrate. **See** Filing No. 21 - Response p. 1.

## ANALYSIS

"The Federal Arbitration Act, 9 U.S.C. § 4, states that a party aggrieved by the failure of another to arbitrate under a written agreement may petition the district court for an order compelling arbitration." *Art Etc. LLC v. Angel Gifts, Inc.*, 686 F.3d 654, 656 (8th Cir. 2012). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). A dispute falling within the scope of a valid arbitration agreement must be submitted to arbitration. **See** *Simmons Foods, Inc. v. H. Mahmood J. Al-Bunnia & Sons Co.*, 634 F.3d 466, 468 (8th Cir. 2011).

The issue of "whether the parties have a valid arbitration agreement at all" is a "gateway matter" that requires judicial resolution. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion); **see** *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) ("[W]hether the parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination.") (internal citation omitted); **see also** *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir. 1998) (stating "a court must decide whether [an] agreement to arbitrate is valid"). The Supreme Court noted the arbitrability determination depends on whether the parties "agree[d] to submit the arbitrability question itself to arbitration." *Kaplan*, 514 U.S. at 943. "[W]hen courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Kaplan*, 514 U.S. at 944 (alterations in original) (**citing** *AT & T Techs., Inc. v. Comm's Workers of Am.*, 475 U.S. 643, 649 (1986)). "Unless the parties clearly and unmistakably provide

otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs.*, 475 U.S. at 649.

"The Federal Arbitration Act create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009) (internal citation omitted).   However "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."   *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007) (**citing** *Kaplan*, 514 U.S. at 944).   "Thus, state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants; if an enforceable agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement."   *Donaldson*, 581 F.3d at 731.

The parties agree Nebraska contract law applies.   **See** Filing No. 23 - Ex. 1(A) Separation Agreement and General Release ¶ 8.   "To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract."   *City of Scottsbluff v. Waste Connections of Neb.*, 809 N.W.2d 725, 740 (2011).   "[W]here the terms of a contract are clear, they are to be accorded their plain and ordinary meaning."   *Gridiron Mgmt. Group, LLC v. Travelers Indem. Co.*, 839 N.W.2d 324, 330 (Neb. 2013).

## A.   December 31, 2009, Agreement

The December 31, 2009, agreement does not require the court to compel arbitration.   The defendant signed Legent Clearing's Arbitration Policy form at the outset of his employment.   The form agreement provides only that the signing employee will submit any employment-related dispute to arbitration.   **See** Filing No. 17 - Ex. R Legent Clearing Arbitration Policy ("I will submit any dispute . . . arising under or involving my employment . . . to binding arbitration. . . .").   There is no evidence before the court the plaintiff's policy contained a similar requirement for the employer to submit disputes to arbitration or the plaintiff would have understood the agreement to do so, and the court will not impose such a requirement.   **See** 1 Domke on Commercial Arbitration § 8:16 n.6 (rev. ed. Aug. 2013) (citing cases) ("When a contract as a whole is otherwise supported

by consideration on both sides, an arbitration clause will not be invalidated for lack of mutuality, even when the clause compels one party to submit all disputes to arbitration, but allows the other party the choice of pursuing arbitration or litigation in the courts."); **see also _Barker_**, 154 F.3d at 791 (interpreting Oklahoma law holding "mutuality in arbitration clauses is not required").  Likewise no evidence suggests the plaintiff signed a separate agreement or otherwise assented to bind itself to arbitrate employment-related disputes.

## B.   Financial Industry Regulatory Authority

The plaintiff is subject to arbitration pursuant to FINRA rules.  FINRA Rule 13200(a) provides that "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among Members; Members and Associated Persons; or Associated Persons."  A member is "any broker or dealer admitted to membership in FINRA."  FINRA R. 13100(o).  The evidence before the court suggests, and the plaintiff does not dispute, the plaintiff is a member of FINRA.

"Associated Person" is defined as "a natural person who is registered or has applied for registration under the Rules of FINRA" or

> [a] sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.

FINRA R. 13100(a), (r).  The plaintiff states the defendant had an "alleged prior status as an associated person under FINRA," arguing such status is irrelevant because the defendant's status changed when he signed the October 2012 agreement.  **See** Filing No. 21 - Brief p. 2-3.  However, "a person formerly associated with a member is a person associated with a member."  FINRA R. 13100(r).  Under the broad language of the rules, the defendant, who was an officer of the plaintiff, is a person associated with a member.

Accordingly, the parties here must arbitrate their dispute "if the dispute arises out of the business activities of a member or an associated person." FINRA R. 13200(a). A dispute is broadly defined as "a dispute, claim or controversy." FINRA R. 13100(l). However, "the Court must examine the nature of this dispute to see if it falls within the class of disputes wherein the issues are reasonably related to FINRA regulated activities." *Lorbietzki v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 2:11cv1585, 2011 WL 855354, at *3 (D. Nev. Mar. 9, 2011) (noting disputes "utterly unrelated to the securities industry" should not fall under the rule). Nevertheless, "[f]or a dispute to fall within the purview of Rule 13200, it need only 'pertain to matters with some nexus to the activity [of the member or associated person] actually regulated by FINRA.'" *NDX Advisors, Inc. v. Advisory Fin. Consultants, Inc.*, No. C 11-3234, 2012 WL 6520689, at *3 (N.D. Cal. Dec. 13, 2012) (alteration in original) (citation omitted). Courts "have uniformly deemed employment-related claims—including claims regarding alleged conduct occurring after the termination of employment—between brokerage firms and their agents as disputes 'arising out of the business activities' of FINRA members." *Hawkins v. Questar Capital Corp.*, 5:12cv376, 2013 WL 5596897, at * (E.D. Ky. Oct. 11, 2013) (noting claims involving third parties and arising after cancellation of an employment contract fell under broad scope of FINRA arbitration rule); *P & M Corp. Fin., LLC v. Paparella*, No. 2:10cv10448, 2010 WL 4272829, at *3 (E.D. Mich. Oct. 22, 2010) (compelling arbitration pursuant to FINRA rules because the case involved whether the defendant misappropriated confidential information and solicited direct competitors of the plaintiff, which was a dispute over business activities between a member and an associated person).

Although the defendant worked as an attorney, rather than a financial analyst or agent, he performed the functions of an individual engaged in the investment banking or securities business who was directly or indirectly controlling or controlled by a member, in his employment as an officer of the plaintiff. The plaintiff's claims allege that the defendant, in such capacity, was in a position to obtain confidential trade and business secrets and other confidential business information, which the defendant then improperly disclosed to the plaintiff's non-essential employees and clients. The defendant's alleged conduct involves the plaintiff's and the defendant's business activities and have some nexus to the activity of the member actually regulated by

7

FINRA.  For this reason, the parties are subject to arbitration pursuant to FINRA rules unless their obligation was superseded.

## C.    October 2012 Agreement

The plaintiff argues the October 2012 agreement "voided the arbitration agreement" by superseding and replacing all previous agreements.  **See** Filing No. 21 - Brief p. 3.  The plaintiff specifically relies on paragraphs seven and eight of the October 2012 agreement.  **Id.**  By contrast, the defendant argues the October 2012 agreement applies only to "the subject matter of [the October 2012 agreement]" and fails to exclude or even reference arbitration, thus is inadequate to supersede the FINRA rules.  **See** Filing No. 24 - Reply p. 3-6 (**quoting** Filing No. 23 - Ex. 1(A) Separation Agreement and General Release ¶ 7).

The FINRA obligation to arbitrate may be superseded and displaced by an agreement between parties.  **See *UBS Fin. Servs., Inc. v. Carilion Clinic***, 706 F.3d 319, 328 (4th Cir. 2013).  "Any such provision, however, must be sufficiently specific to impute to the contracting parties the reasonable expectation that they are superseding, displacing, or waiving the arbitration obligation created by FINRA. . . ."  **Id.** (applying parties' contract to FINRA R. 12200 as between a FINRA member and a customer).  Although more than one interpretation of a provision might be possible, the presumption in favor of arbitration requires a sufficiently specific forum selection clause to preclude arbitration.  **Id.** at 329 (noting "one would reasonably expect that a clause designed to supersede, displace, or waive arbitration would mention arbitration"); ***Newman v. First Montauk Fin. Corp.***, 2010 WL 2933281, at *5 (E.D.N.C. July 23, 2010) ("Furthermore, where an arbitration clause is reasonably susceptible of an interpretation that covers the dispute between the parties, only an 'express provision' in the arbitration agreement excluding the dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration' suffices to preclude arbitration.") (**quoting *Washington Square Sec., Inc. v. Aune***, 385 F.3d 432, 436 (4th Cir. 2004)); **see *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC***, 645 F.3d 522, 525 (2d Cir. 2011) (noting "the presumption in favor of arbitrability should only be applied 'where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand'") (**quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters***, 130 S. Ct. 2847, 2858-

59 (2010)). Therefore, a broad arbitration agreement governs disputes despite parties assent to a nonexclusive forum selection clause in a subsequently enacted agreement. *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005); *Offshore Exploration & Prod. LLC v. Morgan Stanley Private Bank, N.A.*, No. 13 Civ. 3537, --- F. Supp. 2d ----, 2013 WL 6230324, at *8-9 (S.D.N.Y. Dec. 2, 2013) (slip op.) (staying case pending arbitration when absence of conflict between arbitration clause in one agreement and forum selection clause, silent on arbitration, in separate later agreement led court to harmonize agreements). An agreement to arbitrate remains in effect unless "positive assurance" exists in the subsequent agreement to sufficiently to override earlier agreement. *Biremis, Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. CV-11-4934, 2012 WL 760564, at *3-4 (E.D.N.Y. Mar. 8, 2012) (**quoting** *Bank Julius*, 424 F.3d at 284). By distinction, a later adjudication clause will displace an arbitration clause when "[b]oth provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other." *Applied Energetics*, 645 F.3d at 525.

The forum selection clause in the October 2012 agreement is insufficiently specific to displace the arbitration requirement contained in the FINRA rule. First, the October 2012 agreement does not mention arbitration. Second, the forum selection provision is not exclusive of arbitration but complimentary to it by requiring the defendant to submit to any court proceeding in this jurisdiction. Finally, the October 2012 agreement's merger clause specifically limits the agreement to the defendant's post-employment consulting arrangement, however the plaintiff's complaint alleges claims which arise based on information the defendant learned prior to the consulting arrangement. Upon consideration,

**IT IS ORDERED**:

1.      The defendant's Motion to Stay Proceedings and Compel Arbitration (Filing No. 16) is granted.

2.      The defendant's Motion to Stay Discovery and Other Pretrial Proceedings, and For a Protective Order, Pending Resolution of Defendant's Motion to Stay Proceedings and Compel Arbitration (Filing No. 18) is granted.

3.      The case shall be stayed until further order of this court.

4.      Counsel shall file a joint status report concerning the status of this case on **May 23, 2014, and every 90 days thereafter**, such report to include counsel's position(s) concerning whether the stay should continue in effect or whether the stay should be lifted.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Order[2] shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 9th day of January, 2014.

BY THE COURT:

 s/ Thomas D. Thalken
United States Magistrate Judge

---

[2] A review of the case law reveals that courts are divided on whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1)(A).

**Non-Dispositive**.  In *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010), the court reasoned motions to compel arbitration are non-dispositive motions.  In *Wilken Partners, L.P. v. Champps Operating Corp.*, Case No. 11-cv-1005, 2011 WL 1257480, at *1 (D. Kan. April 4, 2011) the court decided that a "motion to compel arbitration is non-dispositive, as an Article III judge ultimately will be required to confirm, modify or vacate any arbitration award involving the parties to [the] action." **Accord** *All Saint's Brands, Inc. v. Brewery Group Denmark, A/S*, 57 F. Supp. 2d 825 (D. Minn. 1999); *Herko v. Metro. Life Ins. Co.*, 978 F. Supp. 141, 142 n. 1 (W.D. N.Y. 1997); *SDD99, Inc. v. ASA Int'l, Ltd.*, Case No. 06-CV-6089, 2007 WL 952046 (W.D. N.Y. Mar. 29, 2007); *Jackman v. Jackman*, Case No. 06-1329, 2006 WL 3792109 (D. Kan. Dec. 21, 2006).

**Dispositive**.  In *Coxcom, Inc. v. Egghead Telecom, Inc.*, Case No. 08-CV-698, 2009 WL 4016629, at *1 (N.D. Okl. 2009), the presiding magistrate judge noted "[c]ourts generally regard a motion to compel arbitration either as a case dispositive matter or a matter not within the statutory authority of a U.S. Magistrate Judge to resolve by Order."  In *Flannery v. Tri-State Div.*, 402 F. Supp. 2d 819 (E.D. Mich. 2005), the district court reasoned that a magistrate judge's order compelling arbitration terminated the litigation in district court and transferred the case to another forum; therefore, the court viewed such an order as the functional equivalent of a dispositive matter, which was reviewable *de novo* pursuant to 28 U.S.C. § 636(b)(1). **See also** *Chen–Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394, 399 (S.D. N.Y. 2011) (finding persuasive those cases concluding that motions to compel are not case-dispositive) and *BBCM, Inc. v. Health Sys. Int'l, LLC*, Case No. C10-0086, 2010 WL 4607917, at *1 (N.D. Iowa November 4, 2010) (noting a split of authority, the magistrate judge issued a report and recommendation "out of an abundance of caution").

I am inclined to agree with *PowerShare* and *Wilken*; however, if the district court determines that the present motions are dispositive matters, then my decision on that point will be reviewable *de novo*.

10